```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                   :
                                   :
UNITED STATES OF AMERICA,          :
                                   :
          - v. -                   :  S2 11 Cr. 986 (GBD)
                                   :
BORIS LISYANSKY,                   :
                                   :
               Defendant.          :
                                   :
                                   :
                                   :
- - - - - - - - - - - - - - - - - x
```

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BORIS LISYANSKY'S MOTIONS IN LIMINE

```
                         PREET BHARARA
                         United States Attorney
                         Southern District of New York
                         Attorney for the United States
                         of America

Alexander Wilson
Harris Fischman
Assistant United States Attorneys

     - Of Counsel -
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA          :

     - v. -                       :   S2 11 Cr. 986 (GBD)

BORIS LISYANSKY,                  :

               Defendant.         :

                                  :
- - - - - - - - - - - - - - - - - - X
```

**GOVERNMENT'S OPPOSTION TO MOTIONS**

The Government opposes the defendant's motions in limine seeking to preclude (1) testimony regarding past crimes committed by a Government witness with the defendant; (2) evidence regarding a Government witness's and the defendant's prior incarceration together; (3) the admission and display of photographs of the defendant and his brothers; (4) testimony regarding the membership of the defendant and his brothers in an organized criminal gang; (5) testimony by the victim regarding the value of the watch taken from him at the time he was shot; and (6) testimony regarding the connection of Gady Kohanov to the Elite Palace restaurant.

**A.   Testimony Regarding Past Crimes Committed by Government Witness with the Defendant**

Testimony from a Government witness that he and the defendant sold untaxed cigarettes and committed a robbery together in the months leading up to the failed murder attempt should be allowed if that witness testifies at trial.  Such

testimony is part and parcel of the witness's own criminal history and is part of the story of how the witness and the defendant know each other and came to trust each other to commit the instant offense.

For one thing, it is appropriate for the Government to inquire of its own witness about his or her own criminal history. As the Second Circuit has recognized, when the Government relies on testimony from "participants in the events about which they testified, it [is] appropriate for the prosecution to elicit testimony during direct examination that exposed details damaging to their credibility." United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991); see also United States v. Louis, 814 F.2d 852, 856 (2d Cir. 1987).

Most importantly, such testimony is part of the story of how the witness and the defendant know each other and came to trust each other to commit the instant offense and is therefore admissible under Rule 404(b).  Under Rule 404(b), evidence of other wrongs is admissible as long as the evidence is not offered to prove a propensity to commit crime.  "One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

Defense counsel argues in their brief that Pipola and other cases stand for the proposition that for such background evidence

to be admitted the crimes must be sufficiently similar to the instant offense.  That is wrong.  Defense counsel's theory is not supported by the case law and frankly does not make sense as it seems to suggest that the past crimes must be sufficiently similar—and therefore be more likely to suggest a propensity to commit the instant offense—to be admissible.

The evidence is admissible because it shows the background of a criminal relationship and trust—not propensity for committing the type of offense that the defense is charged with. For example, in Pipola, evidence of among other things, making usury loans and selling stolen and counterfeit credit cards was admitted even though it was a robbery trial.  Plainly the court in Pipolo was not relying on the similarity between the charged conduct and the past crimes.  The court allowed the evidence in "as background information to make the story of the crimes charged complete and to enable the jury to understand how the illegal relationship between the co-conspirators developed." See, also United States v. Mercado, 573 F.3d at 141-42 (upholding the admission of prior gun sales involving the defendant and his co-conspirators in a drug prosecution to show "the development of the relationship" by providing "background for the events alleged in the indictment' so that "the jury [could] understand the complete story of the crimes charged, or how the illegal relationship between coconspirators developed" (internal quotation marks omitted)); United States v. Rosa, 11 F.3d 315,

334 (admitting testimony of Government witness concerning uncharged car thefts committed by defendant and Government witness as background evidence in trial where defendant was charged with drug trafficking, firearm offenses and crimes of violence, but not auto theft).[1]

If anything, the fact that the past crimes these individuals committed together are different in some respects from the charged crimes in this case reduces the prejudicial effect of the introduction of such testimony and further dilutes the force of defense counsel's argument.

### B. Evidence of Prior Incarceration

The defendant similarly seeks to preclude evidence that the same Government witness and the defendant first met while in prison. This evidence is admissible for precisely the same reason the past crimes described above are admissible. "One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case." United States v. Pipola, 83 F.3d 556, 566 (2d Cir. 1996).

The Government intends to elicit testimony from the witness that the defendant and the cooperator met while in prison in 2009, a little more than a year before they agreed with each other to murder the two intended victims in this case. The

---

[1] Any prejudice to the defendant can be cured by an appropriate limiting instruction. See United States v. Lasanta, 978 F.2d 1300, 1307-1308 (2d Cir. 1992).

Government expects that the witness would testify in sum and substance that while in prison the two men became friends.  The defendant would also testify that he told the defendant about certain past crimes he had committed, including acts of violence in which he used a firearm.  The Government believes that this evidence is critical in explaining to the jury how the two men came to know each other, trust each other, and ultimately why the defendant felt comfortable in approaching the witness about committing a murder for him.

Evidence of a defendant's prior incarceration that is offered for legitimate non-propensity reasons is properly admitted at trial.  See e.g., United States v. Mauro, 80 F.3d 73, 76 (2d Cir. 1996) (affirming district court's admission of evidence that defendant was incarcerated when he met with a co-conspirator because the fact of the defendant's incarceration was admissible to prove his motive for his financial incentives to engage in the charged criminal conduct); United States v. Moore, 376 F.3d 570, 574 (6th Cir. 2004) (noting that testimony in a bank robbery trial establishing that a defendant met a co-conspirator while in prison was not improper inasmuch as it proved a "prior relationship" that "was relevant in proving that the [co-conspirators] had a common plan"); United States v. Blakeny, 942 F.2d 1001, 1018 (6th Cir. 1991) (In affirming a district court's decision to allow testimony about how a co-conspirator met the

defendant in prison the court wrote, "We find that the district court did not abuse its discretion in admitting evidence related to Kutnyak's prior incarceration because it was offered to show opportunity to commit the crime charged. . . . .Weiss offered testimony about Wolk and Kutnyak's initial meeting which served as a foundation for subsequent associations of which Weiss was knowledgeable."); United States v. Robinson, 956 F.2d 1388, 1396-97 (7th Cir. 1992) (affirming admission of evidence that, "At trial, Yackey testified that Paul told him, in 1980 or 1981, that he wanted to begin distributing cocaine because he needed to 'support his family and keep things going' while he was in prison. The government introduced evidence of Paul's Florida imprisonment to explain his motive, intent, opportunity and plan, in setting up the cocaine distribution operation. The jury was not informed of the criminal conduct underlying the imprisonment.")

To limit potential prejudice, the Government would not offer evidence of the defendant's underlying conviction that led to his imprisonment and would not object to an appropriate limiting instruction to the jury explaining the limited purpose of the evidence concerning the defendant's prior incarceration.

**C.   Admission of Non-Incriminating Photographs.**

Defense counsel objects to the introduction of photographs of certain individuals, including the defendant.  It is common practice in criminal trials, in particular in

conspiracy trials, for the Government to display photographs of participants in relevant events so that jury can more easily identify and remember different participants and what roles they played.

Here, defense counsel objects to the introduction of a photograph of the defendant because it is a "mug shot." However, this photograph, of the defendant in a white t-shirt, is not a classic mug shot, indeed it could easily be a driver's license or passport photo.

To the extent that the Second Circuit has scrutinized the introduction of "mug shots" at trial it has not been the types of photographs at issue here.  Instead, those cases have addressed the introduction of classic mug shots (double-shot photographs with front and profile alongside each other and with prison numbers across the bottom of the picture) of the defendant that have the effect of informing a jury of a defendant's prior criminal record.  See United States v. Harrington, 490 F.2d 87, 494-95 (2d Cir. 1973).

There is no such concern here.  The photograph is innocuous.  As such, the unique concerns raised in Harrington simply do not apply in this case. See United States v. Giles, 2000 WL 424142, at *1 (2d Cir. Apr. 13, 2000) (rejecting Harrington argument because "none of the photos in this array are, as [defendant] characterizes them, 'mug shots.'  Rather, they are all head-and-shoulders shots of casually dressed young-

adult men. Unlike mug shots, admission of these photo arrays was not 'equivalent to the introduction of direct evidence of a prior criminal conviction.")

In sum, the photograph of the defendant in this case is not a classic "mug shot" and is not tantamount to "direct evidence of a prior criminal conviction."

Similarly, there is no basis for the defense's effort to preclude the admission photographs of the defendant's brothers. Defense counsel merely asserts that display of those photographs would indicate to the jury that the defendant and his brothers were part of an organized criminal gang, making no argument for why that is likely to be the case. Nor does defense counsel cite a single case in which a court has ever adopted that reasoning. There is no reason to believe that the jury would draw a prejudicial inference from the mere display of photographs of the defendant's brothers, and no reason for the Court to depart from the routine practice of permitting such displays to assist the jury's comprehension of the evidence.

### D. Testimony Regarding the Defendant's Membership in an Organized Criminal Gang.

The Government does not dispute that testimony by the victim regarding the defendant being part of "some sort of gang" would not be based on personal knowledge, and it will not seek to elicit such testimony at trial. Nor does the Government presently anticipate eliciting testimony specifically about the membership of the defendant or his brothers in any organized

criminal gang from any other source.

To the extent the defense seeks to preclude any testimony, regardless of its basis, regarding a connection between any organized criminal group and the charged murder-for-hire conspiracy, however, that is clearly inappropriate.  The Government anticipates offering testimony regarding statements by the defendant suggesting that an organized criminal group was connected to the murder-for-hire plot.  Such testimony is obviously admissible non-hearsay, and is probative of the motivation for the commission of the charged offense.  See FRE 801(d)(2)(A). Accordingly, there is no basis to preclude testimony regarding statements to that effect made by the defendant.

### E.  The Victim's Testimony Regarding the Value of His Own Watch.

The defense seeks to preclude the victim from testifying about the value of his own watch, or to describe its appearance in terms of how expensive it looks, but offers no rule of evidence or case law which could support its request.  The victim clearly has sufficient knowledge regarding his own watch to estimate its value.  Similarly, he is entitled to describe how the watch appeared to him, including by describing how expensive it looked, as people routinely do in describing watches and similar items.  If defense counsel wishes to challenge the reliability of the victim's perceptions of his watch's value,

cross-examination is the appropriate vehicle, not preclusion.

### F. Testimony Linking Gady Kohanov to Elite Palace.

The defense also seeks to preclude testimony regarding Gady Kohanov's family connection to the owners of Elite Palace, on the basis that such testimony is uncorroborated, and offered to show that the defendant and Kohanov "were both connected to Elite Palace and that Boris wanted to kill the Zavolunovs because they were competitors of Elite Palace." (Defendant's Memorandum of Law at 12.) Reputational testimony regarding a person's ancestry is clearly admissible under Rule 803. FRE 803(19). Lack of corroboration is not a basis for precluding a witness's testimony, but rather goes to the weight which the jury should give to that testimony. Finally, the purpose for offering the testimony identified by defense counsel is entirely proper, going directly to the defendant's motivation for the charged offense, and defense counsel does identify any grounds on which that purpose would warrant preclusion.

### G. Conclusion

For the foregoing reasons, the Government respectfully

requests that the defendant's motions in limine should be denied.

Dated: New York, New York
       April 9, 2013

                        Respectfully submitted,

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the United States
                        of America

                By:          */s/ Alexander Wilson*
                        Alexander Wilson
                        Harris Fischman
                        Assistant United States Attorneys
                        Tel. Nos.: (212) 637-2453/2305

## **AFFIRMATION OF SERVICE**

Alexander Wilson, pursuant to Title 28, United States Code, Section 1746, hereby declares under the penalty of perjury:

That he is an Assistant United States Attorney in the Office of the United States Attorney for the Southern District of New York.

That on the 9th day of April, 2013, he caused a copy of the Government's opposition to be served by ECF and email on defense counsel:

Melinda Sarafa, Esq.
Beth Farber, Esq.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
April 9, 2013

_____/s/ Alexander Wilson
Alexander Wilson